UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MICHAEL BELL,

Plaintiff,

v.

FISHING COMPANY OF ALASKA, et al.,

Defendants.

CASE NO. C06-195RSM

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

Plaintiff Michael Bell filed this complaint pursuant to the Jones Act, 46 U.S.C. § 688, seeking damages for injuries he received while working in defendant's employ. The matter is now before the Court for consideration of defendant Fishing Company of Alaska's motion for partial summary judgment on the issues of negligence and unseaworthiness. Dkt. # 19. Plaintiff has opposed the motion. For the reasons set forth below, the defendant's motion shall be granted.

FACTUAL BACKGROUND

Plaintiff worked in the fish processing area of the F/V *Alaska Ranger*. On April 5, 2005, plaintiff slipped as he was descending the stairs[1] leading from the crew living quarters down to the galley area. The stairway leads toward the rear of the boat, so that as a person descends the stairs, his right side is toward the port side of the boat. The stairsteps are metal with a perforated or grated tread, and a

[1]The ship's stairs are often called a "ladder" in seamen's terminology. The terms "stairs" and "ladder" are used interchangeably throughout the documents filed in this case.

rounded front edge. They are twenty-four inches wide, and each step is approximately ten inches in depth. The rise is nine and a half inches. There is a railing running the length of the starboard side, attached to the bulkhead. The port side is open, but there is a structural post at the bottom, as well as a ring or flange fifteen to twenty inches deep around the opening where the stairs pass through the floor. Near the bottom of the stairs, in the far left corner of the landing area, is a garbage can for galley refuse. The garbage can is secured to the wall with a "bungee" cord, and does not obstruct access to the stairs. Deposition of Captain Jeffrey Parker, pp. 13-19; Deposition of Michael Bell, p. 63; Declaration of John Douglas Dixon, ¶ 6.

Plaintiff states in his deposition that during his employment on the F/V *Alaska Ranger* he descended these stairs numerous times, with his left hand on the railing and his right hand against the metal ring (as he described it) which lines the opening of the hatch. Deposition of Michael Bell, p. 63-64. This was consistent with the "one hand for the boat" rule. *Id*. at 68. On April 5, 2005, he descended the stairs as usual, with one hand on the rail and the other on the "metal part" opposite. *Id*. at 76-77. As he neared the bottom, his right foot encountered too much traction on the stair tread, and his left foot slipped from the edge of the fourth or fifth step (counting up from the bottom) to the deck, causing him to "do the splits". Deposition of Michael Bell, p. 58-65. Plaintiff's foot slipped because the heel of his left foot contacted the edge of the stairstep, and then his foot skipped down across the edges of the three or four remaining steps. *Id*., p. 67, 69. Plaintiff was not certain if his head was below the lower edge of the barrier around the opening of the floor above at this time.[2] *Id*. at 67. Fearful of hitting the garbage can on the left, he reached to his right to grab the support pole, letting go of the handrail on his left side. *Id*. After missing the last few steps, plaintiff's left foot landed on the deck, twisting his knee. *Id*. at 59.

Plaintiff alleges that in this fall he injured his back and knee,[3] and strained his groin. He claims that his injuries were caused by the lack of a handrail on the right side of the stairway, as well as the

[2] When asked whether his head was "down through the opening", plaintiff responded, "I have cleared—I cleared the opening in the floor. Or it was—I mean, I could see daylight. **I don't know how high my head,** you know, eye level." Deposition of Michael Bell, p. 67 (emphasis added).

[3]The complaint states that he injured his right knee, but in his deposition plaintiff states that he injured his left knee. Complaint, ¶ 4; Deposition of Michael Bell, p. 77.

presence of the garbage can at the bottom. Defendant has moved for summary judgment on the basis that neither of these conditions constitutes negligence under the Jones Act, nor an unseaworthy condition. The facts surrounding the condition of the stairs and stairwell are not in dispute, and the matter is capable of resolution by summary judgment.

DISCUSSION

Summary judgment is proper only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." F.R.Civ. P. 56(c). The moving party has the burden of demonstrating the absence of a genuine issue of fact for trial by "identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotrex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party satisfies this burden, the opponent must set forth specific facts showing that there remains a genuine issue for trial. F.R.Civ. P. 56(e).

A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). If the evidence is merely colorable or is not significantly probative, summary judgment may not be granted. *Id.* at 249-50. It is not the court's function at the summary judgment stage to determine credibility or to decide the truth of the matter. *Id.* Rather, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id*. at 255.

Plaintiff filed this suit pursuant to the Jones Act, 46 U.S.C. § 688, and general maritime law. The Court has jurisdiction of the matter pursuant to 28 U.S.C. § 1331. Venue is proper in this district due to defendants' presence here.

The Jones Act provides that "any seaman who shall suffer personal injury in the course of his employment may . . . maintain an action for damages at law, . . . and in such action all statutes of the United Stated modifying or extending the common-law right or remedy in cases of personal injury to

railway employees shall apply. . . ." 46 U.S.C.§ 688. Plaintiff was a seaman within the meaning of the Jones Act on April 5, 2005.

In order to prevail on his negligence claim under the Jones Act, plaintiff has the burden of proving, by a preponderance of the evidence, that the defendant was negligent, and that such negligence was the cause of injury to the plaintiff. Negligence is a cause of an injury if it played any part, no matter how small, in bringing about the injury, even if the negligence operated in combination with some other cause. *In re Hechinger*, 890 F. 2d 202, 208 (9th Cir. 1989); *cert. denied*, 498 U.S. 848 (1990); *Ribitzki v. Canmar Reading & Bates, Ltd. Partnership*, 111 F. 3d 658, 662 (9th Cir. 1997). However, the mere occurrence of an injury is not alone sufficient to create liability. The plaintiff must show that the employer's conduct fell below the required standard of care. *Gautreaux v. Scurlock Marine, Inc.*, 107 F. 3d 331, 335 (5th Cir. 1997) (*en banc*.

In order to prevail on his claim of unseaworthiness under the Jones Act, plaintiff has the burden of proving by a preponderance of the evidence that the F/V *Alaska Ranger* was unseaworthy, and that the unseaworthy condition was a cause of the injury to plaintiff. A vessel is seaworthy if the vessel and its parts and equipment are reasonably fit for their intended purpose, and operated by a crew which is reasonably adequate and competent for the work assigned. Conversely, the vessel is unseaworthy if the vessel or any of its equipment is not reasonably fit for its intended purpose, or if its crew is not reasonably adequate or competent to perform the work assigned. *Ribitzki*, 111 F. 3d at 664. Unseaworthness is a cause of injury if it played a substantial part in bringing about injury to the plaintiff. *Ribitzki*, 111 F. 3d at 665.

A vessel owner has a duty to provide adequate safety equipment for the vessel. However, the vessel owner is not required to furnish an accident-free ship. The vessel owner is not required to have the best parts and equipment, nor the finest of crews; it is required to have what is reasonably proper and suitable for its intended use. *Mitchell v. Trawler Racer*, 362 U.S. 539, 550 (1960); *Lee v. Pacific Far East Line*, 566 F. 2d 65, 67 (9th Cir. 1977).

Defendant has moved for summary judgment on the basis that there are no facts in dispute regarding the condition of the stairwell: the treads were made of grated, non-slip metal; there was a

handrail on one side; and there was no foreign substance on the stairs, nor any failure of the ship's equipment, that caused plaintiff's slip and fall. Plaintiff, in opposing summary judgment, asserts that

> plaintiff's negligence claim is predicated on the **undisputed** fact that the stairwell down which Plaintiff fell and sustained his injuries did not have a second adequate handrail to grasp onto, steady himself and prevent falling the rest of the way down the steps, and that an obstruction was placed at the bottom of the steps [garbage can at the "landing"] which prevented Plaintiff from landing squarely thus mitigating the physical effects of the fall. The fact finder is charged with determining whether those facts as alleged—i.e., existence of the second ["outboard"] hand rail—would have allowed Plaintiff to grasp onto it and stabilize himself, thus preventing him from falling completely down the steps and sustaining the injury, and whether the absence of same constituted the failure to exercise reasonable care under the circumstances for the safety of a crewmember and/or a defective—hence unseaworthy—condition. In addition, the fact finder may deduce that the existence of the garbage can at the base of the steps constituted an unreasonably dangerous obstruction which prevented Plaintiff from landing squarely, thus reducing the severity of the injury and constituted an unseaworthy condition and/or a breach of defendant's duty to provided [sic] Plaintiff with a safe place in which to work and failure to exercise reasonable care under the circumstances for the safety of the crewmember.

Plaintiff's Response, p. 3 (emphasis in original).

It is thus plaintiff's contention that defendants were negligent in failing to provide handrails on both sides of the stairway, and in allowing a garbage can to be secured near the bottom of the stairs. When asked by defendants to provide evidence of the applicable standard of care to support the claim of negligence, plaintiff responded in a letter as follows:

> In regards to ocean regulations, as you know, government regulations may be applied to set the standard of care, even if they are not made applicable for purposes of establishing negligence per se. We maintain that regulations including, but not limited to, the following provide the standard of care: 46 CFR § 72.05-20; CFR § 1910.24; American Bureau of Shipping, § 5.1, 1.4(a): 2001 ASTM Standards for Ships and Marine Technology, § 31.8.4. Other regulations may be disclosed during the course of discovery and we will supplement same.

Dkt. # 2, Exhibit 5.

In supporting the motion for summary judgment, defendants have provided the declaration of expert John Douglas Dixon, a naval architect and marine engineer. Mr. Dixon inspected the F/V *Alaska Ranger* on August 20, 2006. He measured the ladder (stairway), viewed its situation, and inspected the stair treads. His declaration states, in relevant part,

> 6. The ladder involved in this case is 24 inches wide, tread spacing is near even at approximately 9 ½ inches, and there is one handrail. The ladder was found in good condition and walking surfaces were well maintained and clean, minimizing any slipping

or tripping hazards.

7. I measured the ladder tread slip resistance of the fifth step from the bottom in three directions. Based on measured slip indexes and the industry and government safe standard slip index of 0.5, there is no reason to believe the ladder was either a slipping or tripping hazard or contributed to any un-seaworthy condition. The ladder tread was safe as designed and maintained and would not have caused the alleged accident. This type and condition of expanded metal diamond pattern steel with serrated edges is the industry standard for ladder treads, providing good traction in wet conditions and not a tripping hazard when dry.

9. The ALASKA RANGER was in full compliance with all regulations as they apply to the area of the vessel as observed. The vessel was seaworthy and properly designed for its intended purpose of fishing in the open ocean in rough seas. The vessel was maintained in and operated in a safe manor with respect to slip and fall hazards on ladders.

10. 46 CFR §§ 72.05 - 20 provide regulations for inspected passenger vessels. They do not apply to this vessel. Even using these regulations for guidance would be improper because passenger vessel arrangements are not compatible with the operating profile of fishing. There are no structural fire protection zones required on a vessel of this type, and no crew make one-time trip passages. Protection and evacuation arrangements to accommodate all ages, sizes, and numbers of people onboard are not necessary.

11. American Bureau of Shipping §§ 5.1 and 1.4(a) do not exist. The plaintiff may be referring to § 5.5.14. This section, however, provides no guidlines [sic] for ladders or stairs.

12. ASTM 2001 § 31.8.1.4 does exist, and the stairwell meets it recommendations. The specification only recommends dual handrails if the stairwell is enclosed on both sides and is more than 44 inches wide. The ladder is also in general accordance with voluntary ASTM F25 Ships and Marine Technology Standards F 1437 for inclined type I ladders.

13. 46 CFR § 1910.24 does not exist. The Plaintiff is probably referring to OSHA regulation 29 sCFR § 1910.24, which does not apply because the vessel was outside OSHA jurisdiction when this alleged incident occurred. If this regulation did apply, the ladder is in compliance.

Declaration of John Douglas Dixon, Dkt. # 21.

Plaintiff has provided no evidence whatsoever, by way of an expert declaration or otherwise, to controvert this expert declaration that the stairway in question is fully compliant with all applicable standards, and does not present a slipping or tripping hazard. Instead, plaintiff offers only his lay opinion that the standard of care should be determined by the Occupation and Health and Safety Act ("OSHA") standards. He provides no expert declaration in support of his contention, but points to several cases from this district for the proposition that "OSHA regulations provide **strong** evidence of the standard of care required by Foss on its uninspected vessels after 1984". Plaintiff's Response, p. 5, *citing McCoy v.*

*Foss Maritime, Inc.*, 442 F. Supp. 2d 1103 (W.D.Wash. 2006) and *Montaperto v. Foss Maritime Company*, 2000 WL 33389209 (W.D.Wash. 2000) (not reported in the Federal Supplement 2d). However, these cases address the applicability of OSHA standards regarding noise exposure, not stairways. *McCoy*, 442 F. Supp. 2d at 1107-1110. Plaintiff has provided no evidence whatsoever that OSHA standards govern the standard of care for stairways on fishing vessels, nor that the F/V *Alaska Ranger* was an "uninspected vessel" within the meaning of the Court's statement in *McCoy* and *Montaperto*. Further, plaintiff has provided no expert opinion to controvert Mr. Dixon's statement that the stairway is in full compliance with ASTM standards, and that should the OSHA regulation apply to this stairway, it is in compliance with that standard as well.[4] Declaration of John Dixon, ¶¶ 12, 13. Plaintiff has thus offered no evidence to controvert defendant's evidence that the single railing on the stairway is consistent with the applicable standard of care, and that it does not constitute either negligence or an unseaworthy condition.

As to the presence of the garbage can, plaintiff has produced no evidence that the can "prevented Plaintiff from landing squarely" as he asserts. Plaintiff's Response, p. 3. In his deposition testimony, plaintiff stated only that he "didn't want to end up in the garbage can." Deposition of Michael Bell, p. 66. For this reason, he let go of the railing and reached to the right, toward the post, so that he "didn't end up going head first into the waste." *Id*. at 67. Yet he landed on the deck on his left foot, and at no time contacted the garbage can. *Id*. at 59. This testimony by plaintiff belies his claim that the presence of the garbage caused his injury, or contributed to it. He has thus produced no evidence of negligence or an unseaworthy condition to support denial of defendant's motion for summary judgment.

CONCLUSION

The mere occurrence of an injury is not alone sufficient to create liability; a plaintiff must show that the employer's conduct fell below the required standard of care. *Gautreaux v. Scurlock Marine,*

---

[4] The OSHA standard cited by plaintiff requires handrails on one side of closed stairways, and on "the open sides of all exposed stairways and stair platforms." 29 CRF § 1910.24(h). Plaintiff has provided no evidence that this stairway, with the hatch opening barrier extending partway down the length and providing a handhold on the port side, is an "exposed" stairway within the meaning of this regulation. On the contrary, defendant's expert testified that "the ladder is in compliance" with this regulation. Declaration of Dixon, ¶ 13.

*Inc.*, 107 F. 3d at 335. Nor is the vessel owner required to furnish an accident-free ship. The vessel owner is not required to have the best parts and equipment, but rather it is required to have what is reasonably proper and suitable for its intended use. *Mitchell v. Trawler Racer*, 362 U.S. at 550; *Lee v. Pacific Far East Line*, 566 F. 2d at 67. Here, the uncontroverted testimony of defendant's expert establishes that the stairs and railing complied with all applicable standards, and presented no slipping or tripping hazard. Plaintiff's own deposition testimony establishes that his slip and fall was caused by a misstep, in which his heel was placed on the edge of the step rather than on the main tread of the step. While this misplacement of his foot caused him to "do the splits", he still landed on his left foot. His claim that a second handrail would have prevented injury is based solely on his own conclusory opinion, not on any actual evidence. He has failed to demonstrate through competent evidence that defendant's conduct in providing one handrail fell below the standard of care.

As plaintiff has come forward with no actual evidence to demonstrate either negligence on defendant's part, or unseaworthiness of the vessel, defendant is entitled to summary judgment on these two claims. Defendant's motion for partial summary judgment is accordingly GRANTED.

Dated this 1 day of May 2007.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE